[No. 1540-1.    Division One.    August 20, 1973.]

BURIEN MOTORS, INC., *Respondent*, v. RICHARD C. BALCH
et al., *Defendants*, ROBERT V. YEAKEL, *Appellant*.

*Krutch, Lindell, Donnelly, Dempcy & Lagesculte* and *Jerome R. Cronk,* for appellant.

*Graham, McCord, Dunn, Moen, Johnston & Rosenquist* and *James D. Rolfe,* for respondent.

HOROWITZ, J.—The principal question raised concerns a real estate broker's liability for drafting lease assignment papers for a proposed lease assignee without disclosing to him the adverse zoning law status of the real estate or the broker's ignorance of that status.

Mr. Robert V. Yeakel, a real estate broker in the Burien area of King County, Washington, originally negotiated a 20-year lease of real property to be used for the sale of used cars—a commercial use within the meaning of the applicable zoning law. The broker, the owners, and Auto Lane, Inc., the lessee, knew the property would have to be rezoned from residential to commercial use to enable lessee to lawfully use the property for the purposes intended. The lease required the lessee to "comply with each and all of the . . . ordinances of the County of King and City of Seattle now in force or hereafter enacted . . . ." It also provided that "[t]his lease becomes null and void in the event the zoning of subject property is inconsistent with general commercial use." The broker and Auto Lane, Inc. then undertook to have the property rezoned to commercial use. The planning commission office informed the broker and lessee that rezoning would be no problem. The broker thereupon turned over to the lessee's attorney the matter of obtaining the necessary rezoning. Without waiting for rezoning to be accomplished, the lessee proceeded to improve the property and conduct its used car business thereon.

About four months later, before rezoning was completed, Burien Motors, Inc., through its president Mr. Wagner, and lessee entered into negotiations to acquire lessee's leasehold interest. Burien believed lessee's use of the property was

lawful. When Burien asked to read the lease to be assigned, lessee suggested that Burien contact Yeakel, explaining the latter was familiar with the property and had worked out the lease. Wagner knew Yeakel as a business and social friend. He conferred with Yeakel and read the lease. He asked Yeakel his opinion of the lease as an investment. Yeakel stated he thought it was "a good deal."

Wagner then asked Yeakel to prepare the necessary legal papers required to get the lease assigned to Burien. Yeakel had no license to practice law, but he agreed to prepare the papers involved. No fee was discussed, but Wagner testified he expected to pay Yeakel for his services. Wagner relied on Yeakel to advise Burien concerning the advisability of the transaction and the zoning status. Yeakel then drew an agreement dated August 30, 1968, a lease assignment called for in the agreement, and a bill of sale by the lessee to Burien of the lease improvements. Yeakel failed to check whether the rezoning to commercial use had been accomplished. He said nothing to Wagner concerning the zoning status of the property. Yeakel explained he believed the rezoning had been accomplished because the lessee had improved the premises and for some time had been using the premises for used car selling purposes. Burien completed the lease assignment transaction and paid the lessee $28,375. Burien went into possession and conducted its used car business on the leased property.

Several months later Yeakel learned the earlier zoning application to change the zoning status to commercial use had been denied. Yeakel did not inform Burien of that fact. Instead, he assisted the former lessee's attorney to file a second rezoning application. The second application was granted on condition that the property owners deed to the county a 30-foot right-of-way on the leased premises fronting upon a road. The owners executed the required deed. Neither they nor Yeakel informed Burien of the conveyance, and Burien remained unaware of any zoning problem involving the leased premises.

Subsequently, Burien was notified by the zoning authori-

ties that its business operations on the entire leased premises was illegal. Burien notified Yeakel, who promised to take care of the matter. Later, Burien learned for the first time that the property owners had delivered a deed to the 30-foot right-of-way and, if it was to be able to lawfully use the property, Burien would be deprived of the legal right to use approximately 25 percent of the leased premises. Burien then rescinded the lease transaction and demanded back from the lease assignor the $28,375 it had paid. Repayment was refused. Burien then sued the lease assignor and Yeakel to recover the $28,375 paid. The court entered judgment for this amount for Burien against both the lease assignor, Auto Lane, Inc., and Yeakel. Only Yeakel, however, has appealed.[1] Defendant assigns error to findings of fact, conclusions of law, and the claimed erroneous admission of evidence. We find no error and affirm.

■ All critical findings of fact are supported by substantial evidence and those findings are binding upon us. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ Defendant basically contends he owed Burien no duty to investigate the zoning law status of the leased property or to disclose that status to Burien. He first argues that he served merely as a scrivener acting gratuitously. The court found otherwise. Finding No. 5. Furthermore, the duty of disclosure does not depend upon whether the fiduciary relationship is a compensated or gratuitous one. *See Central Cab Co. v. Clarke*, 259 Md. 542, 270 A.2d 662 (1970); Restatement of Torts § 552, comment *c* (1938).

Defendant further argues that unless he was Burien's agent in a conventional sense, he was not a fiduciary. We do not agree. An independent contractor, such as a bank, attorney, business advisor, or even a broker, conducts an independent business. That fact does not mean that he may not come under a duty to disclose material facts when he

---

[1]In view of the conclusions reached, we need not decide whether Mrs. Yeakel is a necessary party to the appeal. All references to Yeakel are intended to refer to the husband.

assumes a relationship of trust and confidence to another. Such persons are treated as falling within the category of agents. Restatement (Second) of Agency § 14 N, at 80 (1958).

The duty to disclose material facts imposed on "[o]ne who in the course of his business or profession supplies information for the the guidance of others in their business transactions" (Restatement of Torts § 552 (1938)) includes the duty to disclose information which in the exercise of due care he should know. Restatement of Torts § 552, comments *c, d, e* (1938). As stated in comment *d*:

> Where the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it. Thus, the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form an intelligent judgment upon the data obtained thereby.

And in comment *e*:

> If the matter is one which requires investigation, the supplier of the information must exercise reasonable care and competence to ascertain the facts on which his statement is based. . . . He must exercise reasonable care and competence in communicating the information so that it may be understood by the recipient . . .

■ ■ If one has a duty to know the truth, it is no defense that he was honestly mistaken. A fiduciary such as an attorney must exercise reasonable care. He must protect his client's interest out of a sense of loyalty, good faith, and duty to exercise reasonable care. Such protection may well involve the duty to investigate the law and facts applicable to the transaction and to disclose the results to his clients. The duty is similar to the duty to disclose imposed upon a trustee who must disclose all material facts concerning the transaction the trustee knows or should know. Restatement (Second) of Trusts § 170 (2) (1959). The duties of an attor-

ney in practicing law, in the respects described, are also the duties of one who without a license and in violation of the statute requiring a license for the practice of law nevertheless undertakes to practice law by drawing a legal instrument. *Mattieligh v. Poe,* 57 Wn.2d 203, 356 P.2d 328, 94 A.L.R.2d 464 (1960); *Andersen v. Northwest Bonded Escrows, Inc.,* 4 Wn. App. 754, 484 P.2d 488 (1971).

■ The trial court rested its judgment solely on the ground of Yeakel's violation of his obligation as a real estate broker to disclose to his client the zoning status of property concerning which he has given advice and prepared legal documents. We have already noted Yeakel made no disclosure of the zoning law status of the property or of his ignorance of that status. The evidence also showed that under the "Standards of Practice and the Code of Ethics of the Seattle-King County Real Estate Board," to which Yeakel subscribed, he was required to check city or county zoning regulations applicable to real property to be sold or leased and to endeavor to keep informed concerning information substantially affecting those interests. Yeakel's conduct did not conform to these standards. It was his duty at the minimum to inform Burien that he did not know the zoning law status rather than to proceed upon the unverified assumption the zoning change had been made. The standards of practice described are in substance similar to the applicable rules of law embodied in Restatement of Torts § 552 already described. Had Yeakel informed Burien of the zoning law status of the property or of Yeakel's lack of knowledge concerning that status, Burien would not have paid $28,375 for a lease "void" under its express terms and for a use illegal under the applicable zoning law.

■ Defendant contends in any event that plaintiff cannot recover the sum awarded because Burien elected to rescind the lease assignment transaction and to recover back the sum paid. It is argued that one who rescinds a contract cannot use the rescinded contract as a basis for the recovery of damages. The argument, however, erroneously assumes that the liability imposed upon Yeakel is a liability for damages on a rescinded contract. Yeakel's liability here

is for breach of his fiduciary duty of disclosure of material facts, a duty independent of Auto Lane, Inc.'s duty, breach of which resulted in a rescission of the lease assignment transaction. Burien was entitled to relief against Yeakel for his breach of duty even though it was also entitled to relief against Auto Lane, Inc. for its breach of duty. *Andersen v. Northwest Bonded Escrows, Inc., supra*. The breaches of separate though related duties by Yeakel and Auto Lane, Inc. converged in causing the same loss sustained by Burien. Burien is, however, limited to a single satisfaction of the loss sustained. It does not claim more. *See Harrison v. Puga*, 4 Wn. App. 52, 480 P.2d 247 (1971).

Defendant makes several assignments of error dealing with the claimed erroneous admission of evidence. He contends the court erred in receiving evidence of certain provisions of the Code of Ethics of the Seattle-King County Real Estate Board. The Code of Ethics is in substance similar to the applicable law. Assuming arguendo the court erred in the respect claimed, the error is harmless. Furthermore, there are other grounds adequate to support the judgment.

He contends the court erred in admitting a letter from the King County Planning Department to Burien dated April 1,7, 1970, stating in substance that plaintiff's operation was illegal because its business was being operated in violation of the zoning law applicable to the property. It is argued that the letter was hearsay. The letter was offered and used for the limited purpose of showing the county's position that plaintiff's operation was illegal, not for the purpose of proving the truth of the position taken. The hearsay rule is not violated when the fact that a particular statement was made is a relevant fact regardless of its truth. *Palin v. General Constr. Co.*, 47 Wn.2d 246, 287 P.2d 325 (1955); 31A C.J.S. *Evidence* § 239 (1964).

Defendant contends the evidence of attorney W. Harold Hutchinson was erroneously admitted. The evidence dealt with the standard of care expected of an attorney in drawing the legal instruments involved. The sole objection made was that the evidence was unnecessary because the court could take judicial notice of a lawyer's duty to his

client. No doubt a court may take judicial notice of rules of law concerning standards of care applicable to attorneys and rules of law concerning what constitutes the practice of law. The receipt of evidence which conforms to the rules of which the court takes judicial notice can scarcely be said to be prejudicially erroneous even if unnecessary.

Finally, defendant contends the court erred in permitting witness Balch of Auto Lane, Inc. to be impeached by statements allegedly made by him in an unpublished deposition. Under CR 32 a deposition may be used to impeach the deponent's testimony at trial. The rule does not confine impeachment to that method. In any case, the claimed impeaching testimony was not on a material matter.

The judgment is affirmed.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied November 29, 1973.

Review denied by Supreme Court January 24, 1974.