[No. 4359-2-III.   Division Three.   October 14, 1982.]

HANGMAN RIDGE TRAINING STABLES, INC., ET AL, *Appellants,* v. SAFECO TITLE INSURANCE COMPANY, *Respondent.*

---

[3]Counsel on appeal, who were not trial counsel, withdrew from the case prior to oral argument; Mr. Lyons appeared pro se.

130

*Peter D. Rayner, Constance D. Gould,* and *Anderson, Evans, Craven, Lackie & Henderson,* for appellants.

*Kristine A. Chrey* and *Witherspoon, Kelley, Davenport & Toole,* for respondent.

RoE, J.—Defendant Safeco is a title company and a closing agent. Plaintiffs Arthur and Lois McNeil were sole stockholders in Hangman Ridge Training Stables, Inc., which was the named purchaser of some property under a contract of sale. Desperate for money, the McNeils applied to Farmers Home Loan Administration (FHLA) for a loan to pay off the contract vendor and other bills. The loan was approved and an agent of FHLA, John Bruegger, advised the McNeils that it would be necessary to place title in McNeils' name individually rather than the corporate name in order to get the loan. Mr. Bruegger further indicated to the McNeils that it might be necessary for them to seek legal assistance. Defendant Safeco was designated by FHLA

to close the loan. Following instructions given to them by FHLA, Safeco prepared the necessary instruments, including a quitclaim deed from Hangman Ridge to the McNeils individually. The McNeils were called in to sign the instruments and the loan went through. Later, the McNeils discovered that the transfer to them from the corporation was a taxable event possibly subjecting them to an unanticipated income tax, which may have been avoidable through an alternative method of distributing the corporate assets to the shareholders themselves.

The McNeils sued Safeco for damages alleging (1) the unauthorized practice of law, that is, execution of the quitclaim deed, (2) negligence (legal malpractice) in failing to advise McNeils of the possible tax consequences of the deed, and (3) violation of the Consumer Protection Act. The trial judge found that Safeco did indeed engage in the unauthorized practice of law but that it was not negligent in the preparation of the deed, which was prepared correctly, according to instructions. The court also held the defendant met its only duty owed plaintiffs, to close in accordance with the escrow instructions, and defendant's actions did not constitute a violation of the Consumer Protection Act. Plaintiffs appeal.

The question then presented is must a nonlawyer loan closer advise borrowers of potential tax consequences of a real estate transfer which is ancillary to the loan transaction? The trial court held no, and so do we.

██ ██ Nonlawyers are held to the standard of care equivalent to that of a lawyer. *Mattieligh v. Poe,* 57 Wn.2d 203, 356 P.2d 328, 94 A.L.R.2d 464 (1960); *Hecomovich v. Nielsen,* 10 Wn. App. 563, 572, 518 P.2d 1081 (1974); *Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 513 P.2d 582 (1973); *Andersen v. Northwest Bonded Escrows, Inc.,* 4 Wn. App. 754, 484 P.2d 488 (1971); *see also* RCW 19.62.020 (held unconstitutional in *Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.,* 96 Wn.2d 443, 453, 635 P.2d 730 (1981)),[1]

---

[1]The recent decision in *Hagan* dealt with the constitutionality of RCW 19.62-

and proposed APR 12(g)(5) (June 2, 1982). The standard to which a lawyer is held in the performance of professional services is that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction. *Walker v. Bangs,* 92 Wn.2d 854, 859, 601 P.2d 1279 (1979), quoting *Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 395, 438 P.2d 865 (1968). The elements of a legal malpractice action are the existence of an attorney/client relationship, the existence of a duty on the part of a lawyer, failure to perform the duty, and the negligence of the lawyer must have been a proximate cause of damage to the client. *Sherry v. Diercks,* 29 Wn. App. 433, 628 P.2d 1336 (1981); *Hansen v. Wightman,* 14 Wn. App. 78, 88, 538 P.2d 1238 (1975). The burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client. *Hansen,* at 88. Likewise, the burden is on the plaintiff to show that the negligence of the attorney was the proximate

---

.020 which authorized certain lay persons to select, prepare and complete documents and instruments involved in property transactions. Holding the statute was unconstitutional as a violation of the separation of powers doctrine, the court stated in dicta at page 447:

> It is the duty of the court "to protect the public from the activity of those who, because of lack of professional skills, may cause injury whether they are members of the bar or persons never qualified for or admitted to the bar." [*Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 60, 586 P.2d 870 (1978).] Even the simplest of conveyances may involve issues of taxation, estate planning, future interests, water rights, equitable conversion, covenants, equitable servitudes, easements, statute of frauds and contract law. As stated in *Washington State Bar Ass'n v. Washington Ass'n of Realtors,* 41 Wn.2d 697, 712, 251 P.2d 619 (1952) (Donworth, J., concurring), "there is no such thing as a simple legal instrument in the hands of a layman." Even escrow agents who may be well trained in certain aspects of conveyancing could face complexities that are beyond the scope of that escrow agent's knowledge. Additionally, the agent could fail to identify and address obscure issues.

The authoritativeness of this language, however, may be nullified by the Supreme Court's proposed APR 12 whose stated purpose is "to authorize certain lay persons to select, prepare and complete legal documents incident to the closing of real estate and personal property transactions . . ." Proposed APR 12(a) (June 2, 1982).

cause of the client's damage. *Hansen,* at 88.

Plaintiffs contend that closers, whether nonlawyers, such as defendant, or lawyers, owe a duty to recognize and alert borrowers to potential tax consequences and advise them to consult with specialists. They rely on *Burien Motors, Inc. v. Balch, supra,* which involved a real estate broker's liability for drafting lease assignment papers for a proposed lease assignee without disclosing adverse zoning status. The court held a duty was owed by the broker, whether a lawyer or not, to disclose to his client the zoning status of property about which he had given advice and prepared legal documents. The court stated at page 577:

> A fiduciary such as an attorney must exercise reasonable care. He must protect his client's interest out of a sense of loyalty, good faith, and duty to exercise reasonable care. *Such protection may well involve the duty to investigate the law and facts applicable to the transaction and to disclose the results to his clients.* The duty is similar to the duty to disclose imposed upon a trustee who must disclose all material facts concerning the transaction the trustee knows or should know. Restatement (Second) of Trusts § 170(2) (1959).

(Italics ours.)

The medical malpractice cases cited by plaintiffs to analogize those situations where a physician may have a duty to refer a patient to a specialist to situations where a lawyer may have a duty to consult another lawyer to handle matters outside his competency are inapposite. *See* CPR DR 6–101(A)(1). As pointed out in *Hagan,* at page 449, "Such [escrow] agent is not held to the high standards of conduct and competence required of an attorney. . . . even though the statute [RCW 19.62.020] attempts to require a similar standard." Thus, comparing standards among physicians is quite different from comparing standards among lawyers and nonlawyers engaged in the unauthorized practice of law.

■■ Defendant Safeco argues that no duty to advise regarding tax implications or to consult a tax specialist arose and the only duty Safeco owed plaintiffs was to close

their loan according to the closing instructions. The trial court agreed, holding in its conclusions of law:

> 6. The standard of care or duty of an attorney or non-attorney closer is to close in accordance with their instructions. When preparing a deed to meet the requirements of the escrow instructions, the closer need not inform or discuss the potential tax ramifications of the deed or its recordation.
>
> 7. Safeco Title did not breach any duty owed to the plaintiffs.

The court further held that the alleged damage to plaintiffs was not reasonably foreseeable. A common law duty is measured by the foreseeability of the risk of harm to others. *Hansen v. Washington Natural Gas Co.*, 27 Wn. App. 127, 130, 615 P.2d 1351 (1980), *rev'd on other grounds*, 95 Wn.2d 773, 632 P.2d 504 (1981). Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails. *Hansen*, at 130, quoting 2 F. Harper & F. James, *Torts* § 18.2, at 1018–19 (1956). Here, there was conflicting testimony by the experts on the issues of duty, minimum standard of care and foreseeability. An attorney expert for defendant testified that in his opinion a closing agent owes no duty to the borrower to foresee the borrower's tax consequences resulting from a loan transaction. In contrast, plaintiffs' attorney expert witness testified that in his opinion a closing agent has a responsibility to advise borrowers of basic consequences of the transaction, one of which is tax. In his view, the closing agent exercising a minimum standard of care would know there are tax consequences where property is distributed from a corporation to its shareholders and accordingly the agent should consult with a tax expert. The court disagreed, stating in its memorandum opinion:

> The court is not satisfied from the proof presented that the standard of care is as claimed by the plaintiff. Only two witnesses testified concerning the standard and their views were opposed. Based upon such meager testimony this court is unwilling to rule that there has been established in this state a standard of care which would

require what might be called "across the board" tax advice or protection for a client in each and every transaction. While it may be argued that such ought to be the standard of care required for the protection of the public, other factors such as expense involved in obtaining such information should be considered. Along with this is the serious central question of whether or not a person seeking simple legal advice or a simple legal document is entitled to, or should be subjected to a broad overview of all of its ramifications.

An additional factor here is the court's unchallenged findings[2] that (1) when Mr. Bruegger of FHLA advised the McNeils of the need to own the subject property in their individual names, he further advised them it might be necessary to seek legal assistance, (2) the McNeils sought no independent legal advice, (3) the McNeils knew that the person who would close the transaction at Safeco was not an attorney. Under these facts, plaintiffs would have the court hold that defendant had the additional duty of refusing to close until plaintiffs sought independent legal advice. There is no authority for this position. Attorneys should be able to have clients come into their office and seek the execution of notes, mortgages, deeds, etc., without feeling an obligation to make extensive inquiries into their personal or financial conditions or give them other advice. Otherwise, there would be no possible limit on the advice attorneys would be required to give. Attorneys should be free to prepare legal instruments at the request of closing ᵣagents, banks, etc., without interviewing the parties. Frequently signatories to legal instruments are in other states or foreign countries.

■ Plaintiffs also assign error to finding of fact 19, which states: "Plaintiffs' damages, if any, were not the proximate result of defendant's acts." As previously stated, the burden is on plaintiffs to show that the negligence of

---

[2]Unchallenged findings become the established facts of the case. *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.,* 96 Wn.2d 806, 814, 638 P.2d 1220 (1982). Only two findings were challenged by plaintiffs: No. 19 on proximate cause and No. 21 on the standard of care.

the attorney was the proximate cause of the client's damage and the damages must be reasonably foreseeable. *Hansen v. Wightman, supra.* Since the trial court found plaintiffs did not meet this burden and its findings are amply supported by the evidence, we will not substitute our judgment. *St. Regis Paper Co. v. Wicklund,* 93 Wn.2d 497, 503, 610 P.2d 903 (1980).

■■ Finally, we address the allegation that defendant's conduct violated the Consumer Protection Act. The pertinent provision of the Consumer Protection Act, RCW 19.86.020, provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

A consumer protection action claim may be based on a per se violation of a statute, *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978), or on deceptive practices unregulated by statute but involving the public interest. *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980); *Lidstrand v. Silvercrest Indus.,* 28 Wn. App. 359, 366–67, 623 P.2d 710 (1981). To recover for a per se violation, plaintiffs must prove (1) the existence of a pertinent statute, (2) its violation, (3) that such violation was the proximate cause of damages sustained, and (4) that they were within the class of people the statute sought to protect. *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). Here, although defendant violated RCW 2.48.180, which makes the unauthorized practice of law a misdemeanor, such violation was not the proximate cause of damages suffered by plaintiffs. Thus, plaintiffs have not made out a per se violation under the Consumer Protection Act. Under the *Anhold* theory of recovery, the conduct complained of must (1) be unfair or deceptive, (2) be within the sphere of trade or commerce, and (3) impact the public interest. Although intent is not required under the act, the conduct must have a capacity or tendency to deceive. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 317, 553 P.2d 423

(1976). Plaintiffs here have not made it past the first element. The trial court's conclusion of law 9 that "Safeco Title's actions were not unfair or deceptive" is supported by the evidence. Safeco performed its duties as the closing agent in accordance with the instructions. It did not hold itself out as an attorney or as a tax specialist. Safeco held itself out as a closing agent and accomplished its purpose in accordance with its instructions.

For the above reasons the trial court did not err in refusing to grant injunctive relief and attorney's fees.

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied November 5, 1982.

Review by Supreme Court pending August 15, 1983.