## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RACHAEL GOLDBERG, in her personal capacity and as Administrator of the Estate of Lawrence Goldberg, | No. 58986-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JENNIFER ALLEN, | |
| Appellant. | |

CHE, J.—Jennifer Allen and Rachael Goldberg (Goldberg) have been in litigation with one another for several years following the death of Goldberg's father, Dr. Lawrence Goldberg. Following Dr. Goldberg's death, Allen claimed to be the sole heir and personal representative of his estate based on a will that was ultimately rejected by a trial court as invalid. In this subsequent case, Goldberg filed suit against Allen for intentional infliction of emotional distress and conversion under Washington's Trust and Estates Dispute Resolution Act (TEDRA).

Throughout both cases, Allen delayed litigation through strategic appearances and withdrawals of counsel and by refusing to provide the court with valid contact information. On the day of trial, Allen surprised Goldberg and the court after being nonresponsive for the majority of the case by having her former counsel reappear and move for a continuance. The trial court ultimately granted a continuance on other grounds but ordered Allen to pay $5,000 in terms before the next trial date or else it would enter a default order against her. Allen failed to pay the terms as ordered, and the trial court entered an order of default. Subsequently, the trial court

entered a default judgment against Allen, ordering her to pay Goldberg over $500,000 in damages, prejudgment interest, and attorney fees.

Allen appeals the trial court's entry of an order of default and default judgment against her. She argues that the trial court abused its discretion by entering the order and judgment because the requirements of CR 55 were not satisfied. We disagree that CR 55 applies but hold that the trial court abused its discretion by imposing the drastic sanction of ordering default, and we reverse.

FACTS

Dr. Lawrence Goldberg died in September 2018.[1] Rachael Goldberg, Dr. Goldberg's daughter, filed a petition for letters of administration and for an order granting nonintervention powers. Dr. Goldberg was survived by Goldberg and two sons. The trial court entered letters of administration. Two weeks later, Allen moved the probate court to revoke Goldberg's letters of administration based on a will that she alleged Dr. Goldberg executed several years before his death. Allen's declaration in support explained that she had known Dr. Goldberg for nine years, and the two were roommates for three and a half years. The will Allen filed expressly disinherited Dr. Goldberg's two sons, but it made no mention of Dr. Goldberg's daughter.

Goldberg and her brother challenged the will and Allen's motion and filed a TEDRA action. Ultimately, the trial court found that the will was invalid based on evidence that it was Allen who brought the will to the attesting witnesses and not Dr. Goldberg and that Allen had attempted to influence the witnesses' testimony. Allen appealed, and Division Three of this court

---

[1] The facts in the following first two paragraphs are taken from the related cases *Goldberg v. Davison*, noted at 29 Wn. App. 2d 1028 (2024), and *In Re Est. of Goldberg*, noted at 19 Wn. App. 2d 1053 (2021).

affirmed the trial court's ruling and awarded the Goldbergs their reasonable attorney fees and costs.

Goldberg then filed this action against Allen for intentional infliction of emotional distress. Goldberg's claim stemmed from Allen's handling of Dr. Goldberg's remains after he passed away. Without notice or consultation with Dr. Goldberg's children, Allen had Dr Goldberg's body cremated and then refused to give the ashes to the children or other family members. Ultimately, Allen revealed that she had dispersed the ashes in an unspecified location.

Goldberg later amended her complaint to add a conversion claim under TEDRA. The conversion claim was based on Goldberg's contention that Allen forged title documents on three of Dr. Goldberg's vehicles as well as converted an investment account.

Allen was represented by Dylan Trosper, the same attorney who represented her during the will contest. A year into the case, Goldberg filed a notice to set trial and requested a jury. Shortly thereafter, Trosper filed a notice of intent to withdraw as counsel for Allen. When Trosper withdrew, he provided an address for Allen but no phone number or email address. The address proved to be inaccurate and all documents sent to Allen by Goldberg or the trial court were returned as undeliverable. Efforts to obtain valid contact information for Allen were fruitless.

On January 20, 2023, the trial court issued a case scheduling order, setting the trial for July 17, 2023. The schedule noted that the deadline for filing a motion to change the trial date was April 24. The schedule also called for the parties to file all trial memoranda and motions in limine by July 3. Goldberg filed her materials by the deadlines, but Allen filed nothing. Goldberg informed the trial court that if Allen did not appear at trial, Goldberg would waive the jury and present her evidence to the court at a default trial.

On July 17, the day trial was set to begin, Trosper reappeared in the case for Allen and moved for a continuance. In support of the motion, Allen claimed that she was experiencing a relapse of her multiple sclerosis symptoms but did not provide any supporting documentation.

The trial court noted that Goldberg had filed a jury demand in November and December. Because the court had not heard from Allen in months and because Goldberg had previously represented to the court that she would waive the jury if Allen did not appear at trial, the trial court assumed Allen would not appear for trial and struck the jury. Goldberg clarified that if Trosper intended to defend Allen, she still wanted a jury trial.

Goldberg argued that Trosper had appeared and withdrawn four times and it appeared Allen did this strategically to delay the case. Goldberg also pointed out that the address Trosper provided for Allen when he withdrew was invalid and did not include her phone number or email, making it impossible for the court or Goldberg to contact her. Goldberg argued that if the trial court granted Allen's continuance, it should do so with terms. Specifically, Goldberg requested the trial court order Allen to pay $5,000 in terms within 10 days based on her failure to pay outstanding judgments against her and her dilatory appearances. Goldberg also argued that, if Allen failed to satisfy the terms, the trial court should enter an order of default.

Based on Allen's lack of participation in the proceedings, the trial court expressed its reluctance to grant Allen's motion for a continuance. The trial court stated that it appeared Allen was playing games with the court to delay a final resolution and initially ruled to deny Allen's motion for a continuance. However, after being reminded of Goldberg's jury request, the trial court granted a continuance with terms, ordering Allen to pay $5,000 to Goldberg no later than August 7 or an order of default would be entered against her. When the trial court imposed terms on the continuance, it explained that it was "only reasonable" given the strategic lack of

participation by Allen. Rep. of Proc. (RP) at 27-28. The court admonished Allen's actions in the litigation, "So it's not appropriate for Ms. Allen to be litigating in this manner. If you're going to litigate, defend. And you defend by addressing the allegations not by attempting to elude a final date in court." RP at 28. The trial court cautioned Allen, "Payment will be due no later than August 7th. And then [] we'll go ahead and proceed to August 11th for a hearing to determine whether we're going to have a default trial or a 12-member jury trial." RP at 30-31.

Allen moved for reconsideration, which the trial court denied. On August 9, Goldberg filed a declaration informing the trial court that Allen had failed to pay the $5,000 and requested a default be entered.

On August 11, at the continued trial date, the trial court granted Goldberg's motion for default against Allen. The trial court entered a default order against Allen in favor of Goldberg on all of Goldberg's claims in her complaint and set an evidentiary hearing to determine damages. The order noted that Allen would not be permitted to appear or defend against the damages at the evidentiary hearing for "failure to comply with prior court orders." Clerk's Papers (CP) at 93.

In October, the trial court entered findings of fact and conclusions of law supporting a judgment awarding Goldberg $505,883 in damages, prejudgment interest, and attorney fees. The trial court based its findings on evidence and arguments presented by Goldberg. The judgment noted, "Allen did not appear and she was not represented by counsel, pursuant to an order of default entered against her for failure to comply with prior court orders." CP at 93.

Allen appeals.

5

ANALYSIS

Allen argues that the trial court abused its discretion by entering an order of default and default judgment against her. We agree.

Allen bases her argument on CR 55. CR 55 provides for entry of default against a party who has failed to appear, plead, or otherwise defend against a judgment for affirmative relief. Allen contends on appeal that she sufficiently complied with CR 55 when her attorney originally appeared in the case and answered the complaint. She further argues that default was inappropriate because Goldberg failed to file a formal motion for default or provide Allen at least five days' notice of her pleadings under CR 55(a)(3).

But CR 55 is not applicable here. The trial court did not order default based on Allen's failure to appear under CR 55. Rather, the trial court's order of default was imposed as a sanction. Nor was Goldberg required to file a written motion for default under CR 55 in these circumstances. The trial court entered the order of default as a sanction pursuant to its previous oral order at the July trial date, and that order conditioned Allen's continued defense in the case on her compliance with terms—paying $5,000 prior to the continued trial date—due to Allen's inappropriate litigation practices.

A decision on sanctions is reviewed for an abuse of discretion. *State v. Gassman*, 175 Wn.2d 208, 210, 283 P.3d 1113 (2012). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Although various court rules allow for the imposition of sanctions, the superior court also has "inherent equitable powers to manage its own proceedings" which justify imposition of sanctions. *Gassman*, 175 Wn.2d at 211. The

inherent power to impose sanctions comes from the superior court's "inherent authority to control and manage their calendars, proceedings, and parties." *Id*.

"Sanctions may be appropriate if an act affects 'the integrity of the court and, [if] left unchecked, would encourage future abuses.'" *State v. S.H.*, 102 Wn. App. 468, 475, 8 P.3d 1058 (2000) (alteration in original) (quoting *Gonzales v. Surgidev Corp.*, 120 N.M. 151, 899 P.2d 594, 600 (1995)). A trial court may impose sanctions under its inherent powers if it finds that a party's or counsel's conduct constituted or was tantamount to bad faith. *Id*. at 474. A party may demonstrate bad faith by, "inter alia, delaying or disrupting litigation." *Id.* at 475 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 St. Ct. 2123, 115 L. Ed. 2d 27 (1991)).

It is well established that Washington courts have the "'inherent power to assess the litigation expenses, including attorney fees, against an attorney for bad faith litigation conduct.'" *Id*. at 474 (quoting *Wilson v. Henkle*, 45 Wn. App. 162, 174-75, 724 P.2d 1069 (1986)). Here, the trial court imposed $5,000 in attorney fees as sanctions under its inherent authority due to Allen's counsel's late appearance and motion for continuance after Goldberg's counsel had prepared for trial. This was well within the trial court's authority and was not an abuse of discretion given Allen's counsel's dilatory appearance. *See S.H.*, 102 Wn. App. at 474.

But we are not persuaded that the severe sanction of default was reasonable under these circumstances. We have yet to encounter a case, and Goldberg offers none as authority, of a trial court entering default as a sanction under its inherent authority.

Default is a possible sanction in other circumstances, such as failure to comply with a discovery order under CR 37(b)(2)(C). In those cases, our courts have properly held that the sanction of a default judgment is severe and should only be imposed where "(1) the party's refusal to obey the discovery order was willful or deliberate, (2) the party's actions substantially

prejudiced the opponent's ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would probably have sufficed." *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002) (citing *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)). Assuming the trial court's inherent authority to control and manage proceedings could extend to default, we recognize that default is a drastic remedy that should be imposed sparingly and only after considering the *Burnet* factors.

The trial court entered a default order after Allen failed to pay the $5,000 in sanctions imposed three weeks prior. The trial court did not determine that Allen's failure to pay the sanction was willful or deliberate as opposed to Allen being unable to pay. The trial court did not make any record as to why other less severe sanctions such as limiting the defense's evidence, excluding witnesses, or precluding claims would not have been effective. Nor did the trial court put its reasoning for default on the record. Rather, the trial court simply granted the motion for default following argument by the parties. While Goldberg argued that Allen was "playing games" with the court by strategically timing counsel's appearances and motions to continue to avoid a final resolution, the record reflects that counsel had withdrawn and reappeared from the present case once and moved for a continuance once.

Under these circumstances, we hold that the trial court abused its discretion by imposing the severe sanction of default against Allen. Accordingly, we reverse the order of default and remand for further proceedings.

## ATTORNEY FEES

Goldberg requests attorney fees and costs incurred in responding to this appeal under RAP 18.1 and RCW 11.96A.150(1).

RAP 18.1 authorizes an award of costs and attorney fees where authorized by law. RCW 11.96A.150(1) authorizes an award of costs and attorney fees from an appeal in a TEDRA action. RCW 11.96A.150(1) also gives this court the discretion to "consider any and all factors that it deems to be relevant and appropriate."

We exercise our discretion and decline to award Goldberg attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.